IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

V                                                    CRIMINAL NO.: 2:20-cr-00016-KS-MTP

MITCHELL CHAD BARRETT
DAVID "JASON" RUTLAND and
THOMAS "TOMMY" WILBURN SHOEMAKER                     DEFENDANTS

---

### DEFENDANT MITCHELL CHAD BARRETT'S
### MOTION TO DISMISS

Defendant, Mitchell "Chad" Barrett ("Barrett"), through undersigned counsel, respectfully submits this Motion to Dismiss, and moves this Honorable Court for dismissal of Counts 1-11 in the Indictment filed against him pursuant to FED. R. CRIM. P. 12(b)(3)(B)(v) because the Indictment fails to state an offense for which Defendant Barrett can be prosecuted as a matter of law.

### Introduction

Counts 1-11 of the Indictment allege a conspiracy from which Barrett withdrew by April 2015, over five years before the Government filed the Indictment, and therefore outside the statute of limitations period for the Government's conspiracy claims.[1] *See* Indict. Dkt. 3, at ¶¶ 30 ("By 2015, Rutland assumed control of WHI"), 80 (establishing that Barrett relinquished his control

---

[1] Barrett denies the allegation that a conspiracy existed. By arguing this motion and withdrawal from the alleged conspiracy, Barrett explicitly does not admit to the existence of a conspiracy or to his participation in one. Barrett asks that the Court not to construe this motion as a waiver of his right to argue that the conspiracy did not exist or that he did not participate in it. Thus, Barrett treats as true the allegations in the Indictment only for purposes of Barrett's arguments that he withdrew from the alleged conspiracy by May 2015.

1

over World Health Industries, Inc. ("WHI") bank accounts and "Rutland and others retained signature authority after February 2015").

As alluded to in the Indictment, Barrett cut ties with the other defendants in 2015. The Indictment states that "in or around May 2015, Barrett and Rutland divided WHI's business enterprise between WHI and a newly created pharmacy. Rutland and others took control of WHI, and began doing business as 'Aspire Rx,' and Barrett formed and operated Opus Rx." *See* Indict. Dkt. 3, at ¶ 75. In fact, Barrett and Rutland dissolved their business relations in February 2015 through vigorous litigation filed by Barrett against Rutland and WHI in the Chancery Court of Hinds County, Mississippi.[2] Barrett and Rutland divided their businesses, cut ties, and entered into a settlement agreement on April 13, 2015—all transfers of interests and rights in the various entities among the parties was deemed to be effective as of that date. Further, the Government was actively involved in the liquidation of WHI assets.

Government has been well aware of the facts related to this case **for years**. The Government's January 2016 application for a warrant to seize property from Barrett contains substantially the same allegations as the Indictment.[3] The Government sat idle while the statute of limitations on these charges expired. The Indictment itself makes clear that Barrett exited the

---

[2] Barrett asks that the Court take judicial notice under Rule 201(b) of the Federal Rules of Evidence that Barrett filed litigation against a number of defendants, including WHI and Jason Rutland in the First Judicial District of the Chancery Court of Hinds County, Mississippi. *See Barrett v. World Health Industries, Inc., et al.*, Civ. Action. No. 25CH1:15-cv-00241 (1st Judicial Dist. Chancery Court, Hinds County, MS, Feb. 19, 2015). Under Rule 201(b), the Court may appropriately take judicial notice of the fact that the litigation initiated on February 19, 2015 and resulted in a settlement agreement and dismissal on April 16, 2015 because such facts are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," namely, the Chancery Court's records. *See* FED. R. EVID. 201(b)(2).

[3] Barrett asks that the Court take judicial notice under Rule 201(b) of the Federal Rules of Evidence that the Government filed an Application for a Warrant to Seize Property Subject to Forfeiture on January 20, 2016 in the Southern District of Mississippi Case No. 3:16-mj-513-FKB.

alleged conspiracy by April 2015, more than 5 years prior to his indictment. Accordingly, the Indictment cannot be cured. The Government simply let time slip away. That error is fatal to their ability to charge Barrett with the conspiracy set forth in Counts 1-11. The statute of limitations required the Government to bring conspiracy charges within five years of Barrett's withdrawal from the conspiracy in April 2015 at the latest. Therefore, Counts 1-11 in the May 27, 2020 Indictment are untimely and must be dismissed.

## Background

On May 27, 2020, over five years after Barrett and Rutland terminated their business relationship, the Government filed the twenty-one count Indictment charging Barrett with ten counts of conspiracy to commit healthcare fraud, wire fraud, and pay kickbacks in violation of 18 U.S.C. §§ 2, 371 & 1349 and 42 U.S.C. § 1320a-7b(b) (Counts 1-10), one count of conspiracy to transfer proceeds of unlawful activity in violation of 18 U.S.C. § 1956(h) (Count 11), three counts of transferring proceeds of unlawful activity in violation of 18 U.S.C. §§ 1956 & 1957 (Counts 12, & 17-18), and three counts of destruction or removal of property to prevent seizure in violation of 18 U.S.C. § 2232(a) (Counts 19-21).

The Government alleges that these charges stem from an alleged conspiracy executed through the conduct of WHI, which was formed and run by Barrett and Defendant David "Jason" Rutland ("Rutland") in 2008, but was, as alleged in the Indictment, taken over by Rutland by April 2015. Dkt. 3, at ¶¶ 30, 75, 80. Central to the Government's case, the Indictment alleges that WHI engaged in seven activities that constitute the alleged scheme forming the basis of the Indictment: (1) price testing; (2) using telemarketing companies to generate medically unnecessary prescriptions; (3) offering and soliciting kickbacks; (4) submitting false claims to healthcare

3

benefit programs; (5) receiving reimbursements based on false claims; (6) deceiving insurance audits; and (7) concealing kickbacks. Indict. Dkt. 3, at ¶ 49.

The Indictment also establishes that Barrett withdrew from the alleged conspiracy by April 2015, after which Barrett had relinquished his control of WHI's bank accounts, and he and Rutland had "divided WHI's business enterprise." Indict. Dkt. 3, at ¶¶ 75, 80. Specifically, the Indictment describes Barrett's withdrawal from control of WHI's bank accounts, which included:

> WHI's BancorpSouth account No. 3983, held in Hinds County, Mississippi, over which Barrett, Rutland, and others had signature authority and control between January 2013 and February 2015, and over which Rutland and others retained signature authority after February 2015.

Indict. Dkt. 3, at ¶ 80. It also states that,

> 75. In or around May 2015, Barrett and Rutland divided WHI's Business enterprise between WHI and a newly created pharmacy. Rutland and others took control of WHI, and began doing business as 'Aspire Rx," and Barrett formed and operated Opus Rx.

*Id.* Further, when Barrett cut ties with Rutland "[b]y 2015, Rutland assumed control of WHI, and in approximately June 2015, WHI began doing business as 'Aspire Rx' and continued in its production and dispensation of compound medications." *Id.* at ¶ 30.

Count 1 alleges a conspiracy to commit healthcare fraud and to devise a scheme and artifice to defraud health care benefit programs based on the allegations in paragraphs 1-82. *See* Indict. Dkt. 3, at ¶ 83-86.

Count 2 alleges a conspiracy to pay kickbacks that occurred from February 25, 2015 through April 22, 2015, over five years before filing of the May 27, 2020 Indictment. *See* Indict. Dkt. 3, at ¶ 87-92.

4

Counts 3-10 allege a conspiracy to make seven kickback payments to doctors in July 2015 from WHI's Bancorp South accounts in Rutland's control after Barrett cut ties and withdrew from the alleged conspiracy by April 2015. *See* Indict. Dkt. 3, at ¶¶ 80, 92-95.

Count 11 alleges a conspiracy to commit money laundering based on underlying unlawful actions by WHI, over which Barrett relinquished control in February 2015. *See* Indict. Dkt. 3, at ¶¶ 96-103.

Barrett withdrew from the alleged conspiracy by April 2015. The May 27, 2020 Indictment was filed after the expiration of the applicable statute of limitations.

## **Argument and Authority**

A defendant may move to dismiss an indictment or information where it fails to state an offense. FED. R. CRIM. P. 12(b)(3)(B)(v). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quotation omitted). A court can resolve a pretrial motion to dismiss the indictment when "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60, 89 S.Ct. 1559, 23 L.Ed.2d 94 (1969).

A court may dismiss counts of an indictment where the undisputed facts establish that the indictment was filed after the statute of limitations had expired. The statute of limitations "reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill-suited for prosecution." *Smith v. U.S.*, 568 U.S. 106, 112 (2013). The general statute of limitations applicable in non-capital, criminal cases, such as this, is five years. 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not

capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").

For a conspiracy charge to comply with that statute of limitations, the Indictment must be returned within five years of the last overt act by a conspirator in furtherance of the conspiratorial agreement. *United States v. Ongaga*, 820 F.3d 152, 157 (5th Cir. 2016). The Supreme Court has clearly established that a party that withdraws from a conspiracy is not liable for the post-withdrawal acts of his co-conspirators, and that "[w]ithdrawal also starts the clock running on the time within which the defendant may be prosecuted, and provides a complete defense when the withdrawal occurs beyond the applicable statute-of-limitations period." *Smith*, 568 U.S. at 111.

Withdrawal from a conspiracy occurs at the time that the defendant "has committed affirmative acts inconsistent with the object of the conspiracy that are communicated in a manner reasonably calculated to reach conspirators." *U.S. v. Heard*, 709 F.3d 413, 428 (5th Cir. 2013) (quoting *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998)). Notably, "[m]ere cessation of activity in furtherance of the conspiracy is not sufficient to show withdrawal." *Id.*

While a party involuntarily prevented from participating in a conspiracy may not have effectively withdrawn from a conspiracy, courts have found withdrawal to be effective where the defendant has voluntarily and affirmatively ceased involvement with the conspiracy and informed at least one co-conspirator. *See U.S. v. Schrovsky*, 202 F.3d 727 (5th Cir. 2000); *c.f. U.S. v. Puig-Infante*, 19 F.3d 929, 945 (5th Cir. 1994) (noting that while imprisonment may be evidence of an affirmative act of withdrawal, "[b]ecause a defendant's incarceration . . . cannot, *by itself*, constitute withdrawal or abandonment.") (emphasis in original). For example, in *Schrovsky*, the Fifth Circuit reversed the district court's decision in order to rule as a matter of law that a defendant effectively withdrew by ceasing involvement with the conspiracy and telling a co-conspirator "that she wanted

nothing else to do with the conspiracy." *Id.* at 729. There, the fact that the defendant – who had participated in a conspiracy to sell heroin in exchange for housing in a repair shop owned by her co-conspirators – told one conspirator that "she wished to cease involvement with the conspiracy when she left the repair shop . . . [and] made no attempt whatsoever to rejoin the conspiracy or communicate with its members after her departure" gave the Court "the definite and firm conviction that a mistake was committed by the district court when it concluded that [the defendant] did not effectively withdraw from the conspiracy." *Id.* Further, this judicial precedent regarding withdrawal falls in line with the Fifth Circuit Pattern Jury Instruction 2.23, which states that a party effectively withdraws from a conspiracy by "telling the other conspirators that he did not want to have anything more to do with it."

Here, the Indictment establishes that Barrett withdrew from the alleged conspiracy by April 2015, after which he relinquished control of WHI's bank accounts and he and Rutland "divided WHI's business enterprise." Indict. Dkt. 3, at 75, 80. Despite this, Counts 1-11 in the May 27, 2020 Indictment are each based on an alleged conspiracy between Barrett and Rutland. Accordingly, the allegations in the Indictment sufficiently establish expiration of the limitations period to warrant dismissal. Moreover, the charges in the Indictment cannot be cured because, as of February 2015, Barrett had firmly withdrawn from the relationships upon which the Government has based its allegations of a conspiracy and communicated his withdrawal in the clearest way possible – by filing corporate divorce litigation on February 19, 2015, naming Rutland and WHI as defendants and seeking complete dissolution of any business relationship with the defendants. The settlement terms presented to and approved by the Court days later, on February 27, 2015, accomplished Barrett's unequivocal withdrawal from his prior involvement with Rutland and in the business they had operated together. The terms of the "corporate divorce" between Barrett and the

7

other parties were enforceable at that point, but formal documents were signed memorializing the settlement terms on April 13, 2015. Not only did Barrett communicate his withdrawal to the alleged co-conspirators, Rutland and Shoemaker, Barrett literally made them sign off on his withdrawal. Even if the Court believes the withdrawal was not complete until the final documents were signed on April 13, 2015, the fact is that Barrett had withdrawn by April 2015. This action was not dictated by another party, such as an arrest or imprisonment, and goes beyond mere termination or resignation from a position of employment. Certainly Barrett's attempt to cut ties and terminate the business relations with Rutland constitutes an "affirmative act[] inconsistent with the object of the conspiracy." *See U.S. v. Heard*, 709 F.3d 413, 428 (5th Cir. 2013).

Additionally, the Indictment's conclusory statements that the conspiracy "continued until at least January 2016" are contradicted even by the allegations and charges in the Indictment. For example, in contrast to the claims in Counts 3-10 that Barrett made unlawful kickback payments from a "Bancorp South Account" in July 2015, the Indictment also establishes that Barrett relinquished his signature authority of WHI's Bancorp South accounts and "Rutland and others retained signature authority ***after February 2015***." *See* Indict. Dkt. 3, at ¶¶ 80, 95. While the Indictment attempts to assert that Barrett's involvement with Opus Rx and Marketing Company 1 continued to work with WHI after May 2015, such allegations do not contradict Barrett's firm withdrawal from the conspiracy. Withdrawal from a conspiracy does not require a defendant to cease all communications with co-conspirators or to unaffiliate with every single entity that may be affiliated with an entity affiliated with any co-conspirator. The alleged connections between Barrett and Rutland after April 2015 are too attenuated to discredit Barrett's withdrawal from involvement with the other defendants. Like the withdrawal found in *Schrovsky*, Barrett's corporate divorce with WHI and the other defendants was an enormous, affirmative action – initiated by Barrett –

8

inconsistent with the object of the alleged conspiracy, and sufficient to effect withdrawal. *See* 202 F.3d 727.

In fact, the Indictment's money laundering charges against Barrett support that Barrett withdrew from the alleged conspiracy. Specifically, Count 11 charges Barrett with conspiracy to commit money laundering while Count 12 charges Barrett individually with money laundering (based on the same underlying specified unlawful activity) by transferring funds "[o]n or about June 29, 2015." *See* Indict. Dkt. 3 at ¶¶ 96-105. Assuming the Indictment does not intend to convict more than once for the exact same conduct, the Indictment reflects the understanding that the underlying alleged conspiracy had already concluded before June 29, 2015. The charged money laundering "[o]n or around June 29, 2015" must, necessarily, have occurred after the alleged underlying unlawful conspiracy was complete in order to avoid merger with the Indictment's conspiracy counts. *See U.S. v. Kennedy*, 707 F.3d 558, 565 (5th Cir. 2013) (a money laundering count merges with the underlying unlawful activity if "the underlying unlawful activity was not complete at the time the alleged money laundering occurred"). In sum, even the charges in the Indictment indicate Barrett's withdrawal from the alleged conspiracy by April 2015.

**Conclusion and Prayer for Relief**

While Barrett denies the allegation that a conspiracy existed, the unequivocal and clearly communicated withdrawal from his prior business relations described in the Indictment establish that Barrett withdrew from any conspiracy associated with Rutland by April 2015. The Indictment herein was returned and filed by the Government on May 27, 2020 —more than five years after Barrett's withdrawal from his prior association and business relations.

Even if a conspiracy existed prior to the withdrawal, the statute of limitations for Counts 1-11 asserting a conspiracy against Barrett expired prior to the filing of the Indictment on May 27, 2020.

For all of the reasons set forth above, Barrett respectfully requests that this Court grant his Motion to Dismiss Counts 1-11 against him contained in the Indictment herein.

Respectfully submitted, this the 31st day of March, 2021.

*/s/ Gene R. Besen*
GENE R. BESEN
TX Bar No. 24045491
BRADLEY ARANT BOULT CUMMINGS LLP
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
Telephone (214) 939-8700
Facsimile (214) 939-8787
gbesen@bradley.com

CLARENCE WEBSTER, III
MS Bar No. 102111
BRADLEY ARANT BOULT CUMMINGS LLP
Suite 1000, One Jackson Place
188 East Capitol Street
Post Office Box 1789
Jackson, Mississippi 39215-1789
Telephone (601) 948-8000
Facsimile (601) 948-3000
cwebster@bradley.com

LISA MISHUNE ROSS
MS Bar No. 9755
LISA M. ROSS, ATTORNEY
P. O. Box 11264
Jackson, MS 39283-1264
Telephone (601) 981-7900
Facsimile (601) 981-7917
lross@lmrossatlaw.com
JOHN D. MOORE

MS Bar No. 10610
LAW OFFICES OF JOHN D. MOORE, P.A.
301 Highland Park Cove, Suite B (39157)
P. O. Box 3344
Ridgeland, MS 39158-3344
Telephone (601) 853-9131
Facsimile (601) 853-9139
john@johndmoorepa.com

*ATTORNEYS FOR MITCHELL CHAD BARRETT*

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing via the Court's CM/ECF system, which will deliver copies to all counsel of record.

This the 31st day of March, 2021.

*/s/ Gene R. Besen*
Gene R. Besen