IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.                                      CRIMINAL NO. 2:20-CR-16-KS-MTP

MITCHELL CHAD BARRETT, *et al.*

MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **grants in part and denies in part** Defendant Barrett's Motion to Transfer Venue [60]. Specifically, the Court grants the motion insofar as Defendant seeks a transfer out of the Eastern Division, but the Court denies it insofar as Defendant seeks a transfer to the Northern Division. The trial of this matter will be held in the Southern Division, at the Dan Russell Courthouse in Gulfport, Mississippi.

I. BACKGROUND

On May 27, 2020, the Government filed an Indictment [3] charging Defendants with a variety of crimes arising from an alleged conspiracy to defraud government health care benefit programs by formulating, marketing, selling, and dispensing compound medications; soliciting and paying kickbacks and bribes to and/or from other parties for referrals or prescriptions for medically unnecessary compound medications; and laundering the proceeds of their fraudulent activity. The Government claims that Defendants bilked government health care benefit programs of over $50 million. Their trial is currently scheduled to begin on August 16, 2021, in

the Eastern Division of this Court, at the William Colmer United States Courthouse in Hattiesburg, Mississippi. The parties estimate it will last six weeks.

During the past few months, the Court suggested to the parties in biweekly conference calls that the trial could not be held in the Eastern Division, for reasons related to COVID-19 mitigation measures and extensive pretrial publicity in numerous related cases over the past five years. On March 30, 2021, Defendant Barrett filed a Motion to Transfer Venue [60], arguing that the Court should transfer the venue for trial from the Eastern Division to the Northern Division. Defendant Rutland joined [61] in the motion, and Defendant Shoemaker does not oppose it [65]. The Government opposes the motion in part, arguing that the Court should transfer venue to the Southern Division, rather than the Northern Division.

## II. DISCUSSION

The Constitution and Rule 18 require that a criminal trial be held in the district in which the crime occurred. U.S. CONST. art. 3, § 2, cl. 3; U.S. CONST. amend. VI; FED. R. CRIM. P. 18. But the Constitution does not require that a criminal trial be held in any particular division within a district. *United States v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002). Moreover, "a criminal defendant is only entitled to a jury drawn from the federal district in which the crime was committed, although the jury may be drawn from a division of the district rather than the entire district." *United States v. Mills*, 389 F. Supp. 3d 528, 533 (E.D. Mich. 2019) (citing numerous cases). The bottom line is that "venue exists anywhere within the judicial district in which

2

the crime was committed," and "there is no right to trial within a particular division in a district." *United States v. Weddell*, 800 F.3d 1404, 1406 (5th Cir. 1986).

But the Rules of Criminal Procedure require the Court to "set the place of a trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." FED. R. CRIM. P. 18. "Although the text of Rule 18 refers only to convenience and prompt administration, the district court may consider other factors." *Lipscomb*, 299 F.3d at 340. Therefore, the Court should consider practical issues such as "speedy trial, docket management, logistics, and pretrial publicity." *United States v. Alvarez*, 561 F. App'x 375, 381 (5th Cir. 2014); *see also Lipscomb*, 299 F.3d at 340, 343-44; *United States v. Roberson*, 124 F. App'x 860, 864-65 (5th Cir. 2005); *United States v. Harris*, 25 F.3d 1275, 1278 (5th Cir. 1994). The Court has "broad discretion" in determining whether an intradistrict transfer is merited. *United States v. Alvarado*, 647 F.2d 537, 539 (5th Cir. 1981).

### A.    COVID-19 and the Prompt Administration of Justice

First, Defendants argue that the trial in this case should be transferred to the Northern Division because the Hattiesburg courthouse cannot handle a multi-defendant, multi-week jury trial with the Court's current COVID-19 mitigation protocols. The Court agrees in part.

On March 13, 2020, the President declared a nationwide state of emergency due to the COVID-19 pandemic. On March 14, 2020, the Governor of Mississippi

likewise declared a state of emergency. On the same day, the Chief Judge of this Court entered the first of numerous special orders addressing the Court's response to the pandemic. *See, e.g.* Special Order, *In re Administrative Orders of the U.S. District Court*, No. 3:40-MC-11 (S.D. Miss. Mar. 13, 2020), ECF No. 52; Special Order # 10, *In re Administrative Orders of the U.S. District Court*, No. 3:40-MC-11-KS-MTP (S.D. Miss. Sept. 11, 2020), ECF No. 66.[1] Likewise, the Governor of Mississippi has issued numerous executive orders since March 2020 addressing the state's response to the pandemic.[2]

At present, the number of new cases in the state of Mississippi has sharply declined since the winter, as have the number of patients hospitalized due to COVID-19. Multiple vaccines are freely available to all-comers, and the Governor has removed virtually all state-level restrictions. However, as the Chief Judge acknowledged in the Court's most recent Special Order, "the pandemic is not over." Special Order #13 at 2, *In re Administrative Orders of the U.S. District Court*, No. 3:40-MC-11 (S.D. Miss. Mar. 16, 2021), ECF No. 85. The Court still has an obligation to protect the health of those participating in trials, including jurors, attorneys, parties, and Court staff. To this end, the Court adopted a comprehensive jury-

---

[1] The Court discussed many of these special orders in detail in other cases. *See* Memorandum Opinion and Order at 1-11, *United States v. Walters*, No. 2:19-CR-51-KS-MTP (S.D. Miss. June 22, 2020), ECF No. 213; *United States v. Auzenne*, 2020 WL 6065556, at *1-*4 (S.D. Miss. Oct. 14, 2020). The Court incorporates its previous discussion of the factual background of the COVID-19 pandemic in this Court and Mississippi.

[2] The Court discussed many of these executive orders in detail in previous orders. *See* Memorandum Opinion and Order at 1-11, *United States v. Walters*, No. 2:19-CR-51-KS-MTP (S.D. Miss. June 22, 2020), ECF No. 213; *Auzenne*, 2020 WL 6065556 at *1-*4. Again, the Court incorporates its previous discussion of the factual background of the COVID-19 pandemic in this Court and Mississippi.

4

resumption plan, which is published on the Court's website. This Court has described many of the plan's protocols in previous orders.[3] The undersigned judge does not anticipate these COVID-19 mitigation measures being lifted before the commencement of this trial in August, and as the Court has stated in previous opinions, it is physically impossible for the Court to conduct a complex criminal trial in the Eastern Division while they are in place. Therefore, Defendants' trial cannot be held in the Eastern Division.[4]

There is another factor in the equation, though. Every judge in this district has a backlog of cases awaiting trial. While the Court has resumed jury trials in some circumstances, the Court's jury resumption plan limits the number of trials that can be held in any one courthouse at the same time. The undersigned judge has conferred with the Clerk of Court, and it would impose an undue burden on the Court's resources to hold this case's trial in the Northern Division during the period of time for which it is scheduled. It's a simple matter of arithmetic. There are five district judges who need courtroom space in the Northern Division, while there are only three district judges sharing courtroom space in the Southern Division. There are also more cases pending in the Northern Division than in the Southern Division. It would impose a substantial strain on the Court's resources to accommodate a jury trial of

---

[3] *See, e.g. Auzenne*, 2020 WL 6065556 at *7-*9. The Court incorporates its previous discussions of COVID-19 mitigation measures.

[4] The Court also believes that it would be very difficult, if not impossible, to seat an unbiased jury, given the amount of publicity related cases have received in the Hattiesburg area. Counsel from prior related cases have all agreed that an unbiased jury could not be drawn from the Eastern Division jury pool. Moreover, the Court anticipates that some of the Government's witnesses will be defendants from related cases.

this length in the Northern Division within a reasonable amount of time. In contrast, the Court has already confirmed the availability of two adjacent courtrooms in the Gulfport courthouse during the time that this case is scheduled for trial.[5]

While Rule 18's reference to the "prompt administration of justice," is "in part a literal command that trials comply with the Speedy Trial Act," the Court must also "weigh the impact the trial location will have on the timely disposition of the instant case." *United States v. Garza*, 593 F.3d 385, 390 (5th Cir. 2010). "This fact includes more than the case at bar; the phrase includes the state of the court's docket generally." *Id.* Moving this trial to the Northern Division would either 1) require a continuance of such length that it would hinder the "prompt administration of justice" in this case, or 2) hinder the Court's ability to fulfill its obligations in numerous other cases, including speedy trial issues.

This is not, as Defendant Barrett suggests in briefing, a matter of "local court policy." Rather, it is a matter of this Court being able to fulfill its obligation to promptly administer justice in this case and every other pending criminal case. Such considerations are not forbidden. Rather, district courts may not rely solely on generalized local court policies without consideration of the undisputed facts in each case. *Lipscomb*, 299 F.3d at 341. Here, the Court has conducted a thorough examination of the facts and considered all Defendants' arguments and evidence. For

---

[5] As the Court has explained in prior related cases, a twelve-person jury plus alternates can not fit in a jury room while observing social-distancing. Therefore, two courtrooms are required – one for the trial, and another to function as a jury room.

all the reasons articulated herein, the Court concludes that the "prompt administration of justice" weighs heavily in favor of a transfer to the Southern Division, rather than the Northern Division.

Additionally, the Court held a criminal trial in the Northern Division in November 2020. The visiting judge's courtroom in Jackson is not substantially larger than the courtrooms in Hattiesburg. The chief difference is that in Jackson there is more room to expand the jury box for social distancing than there is in Hattiesburg. The case tried in November 2020 had two defendants, their attorneys, and support staff, and their side of the courtroom was crowded, to say the least.

There are *three* Defendants in this case. The courtrooms available in Gulfport are larger than those in Hattiesburg and the visiting judge's courtroom in Jackson, making more room for Defendants, their attorneys, and support staff. Additionally, in Gulfport, the Court will be able to use two adjacent courtrooms. One will function as a jury room, and the jurors will use non-public corridors to move back and forth. In Jackson, Court Security Officers must accompany jurors through public corridors to move them from one courtroom to another, multiple times a day over the course of a six-week trial. In the November 2020 case, the Court made do in the absence of other options,[6] but it was not ideal. Therefore, the Court believes that holding the trial in the Southern Division provides the best setting for the Court to try this case with an unbiased jury while maintaining the integrity of its COVID-19 mitigation

---

[6] Specifically, that case was moved to the Northern Division because a hurricane struck the Gulf Coast shortly before the trial, rendering the Gulfport courthouse temporarily unavailable.

measures.

## B.    *Convenience*

Next, Defendants argue that the convenience factors weigh heavily in favor of transferring the trial to the Northern Division. Defendant Barrett represents that if the trial is held in Jackson, he and his family will stay with relatives in Jackson during the trial. Barrett also notes that most of his attorneys live in the Jackson area, and that the one who doesn't live there has access to his firm's local office. Barrett represents that if the trial is moved to Gulfport, he would have to pay for eight hotel rooms and two conference rooms for the entire length of trial, creating an additional expense of $135,000.00. Finally, Barrett argues that a trial in Jackson would be more convenient for the witnesses, noting the locations of entities and individuals named in the indictment.

Defendant Rutland joined Barrett's arguments, noting that he and his immediate family live in the Northern Division, and that they would have to pay for room and board if the trial is held in Gulfport. Rutland also represents that he has very young children, and that a trial in Gulfport would substantially disrupt his wife's ability to attend trial. Finally, one of Rutland's attorneys lives in the Jackson area, while the other lives in Oxford. A trial in Gulfport would require them to rent office space and pay for room and board for the length of trial, in addition to substantially disrupting the Jackson attorney's ability to maintain his practice. [7] Rutland

---

[7] The Court does not find this last point persuasive in that a six-week, multi-defendant, complex white-collar criminal trial will adversely affect counsel's ability to maintain his practice no matter

estimates that holding the trial in Gulfport will increase his defense cost by anywhere from $29,000-$50,000.

When assessing convenience under Rule 18, the Court should consider "(1) the distance from the defendant's home; (2) the location of the defendant's witnesses; and (3) the ability of the defendant's family and friends to attend the trial." *Garza*, 593 F.3d at 390. The Court should also consider the location of the defendant's attorney's practice. *Id.* However, if a district court has a valid reason for an intradistrict transfer, "travel and lodging expenses for lawyers and witnesses do not constitute prejudice sufficient to overcome a district court's determination regarding the place of trial." *United States v. Kaufman*, 858 F.2d 994, 1006 (5th Cir. 1988); *see also Alvarado*, 647 F.2d at 539-40; *United States v. Fagan*, 821 F.2d 1002, 1008 (5th Cir. 1987).

The Court acknowledges that Defendants will incur additional expense if the trial is held in the Southern Division, but the Court notes that the alleged additional expense is minimal in comparison to the total cost of defense in this multi-week, multi-defendant, document-intensive, complex white-collar case. The Court also believes that Defendants have exaggerated the increased cost of a trial in Gulfport. For example, Barrett's estimate of costs includes hotel rooms at a rate of $285.00 per night. The undersigned judge and his staff frequently book hotel rooms on the coast, and there is always adequate lodging available for a quarter of that price.

---

where the trial is held.

Additionally, the Court has not yet addressed how many people will be able to attend the trial and, therefore, incur the additional cost of room and board. With three Defendants, space on that side of the Courtroom will be limited, even without social-distancing. Likewise, space in the gallery will be limited by the Court's COVID-19 mitigation measures. The Court certainly understands Defendants' desire for their friends and family to attend the trial, and it wishes to accommodate Defendants to the extent possible. However, there will be a hard cap on the number of people allowed in the courtroom, and the Court will make a live audio feed available to anyone who wishes to listen to the trial remotely. Therefore, anyone, including Defendants' friends and family, will have the option of listening to the proceedings from any location.

As for the witnesses, Defendants argue that Rule 18's reference to the convenience of witnesses pertains only to *their* witnesses,[8] but they did not provide the Court with a list of witnesses and addresses for the Court to evaluate. In the absence of more specific information about who will actually be a witness at trial, the convenience of witnesses – while not inconsequential – is not a particularly persuasive point for or against any venue.

Gulfport is approximately 160 miles from Jackson. Defendant Barrett and at least one of his attorneys will have to incur some travel expenses regardless of which

---

[8] The Court does not agree that this is an accurate statement of the law, in that Rule 18's plain language does not impose such a limitation. Moreover, witnesses – whether called by the Government or a defendant – are typically third-parties to the case, and their convenience is not necessarily concurrent with the Government's convenience.

venue the Court chooses. Likewise, at least one of Defendant Rutland's attorneys will have to travel no matter what, and if the Court holds the trial in Jackson, Defendant Shoemaker's attorneys and their staff will have to travel from Gulfport to Jackson.

This within-district transfer is a far cry from those the Fifth Circuit has deemed an abuse of discretion. For example, in *Lipscomb*, the district court *sua sponte* transferred venue to a division approximately 300 miles away without addressing any of the defendants' objections. 299 F.3d at 337-38. In *Dupoint*, the district court made no factual comment or finding with regard to the defendant's convenience, but instead made statements on the record indicating that the "real reason for [the] transfer was the convenience of the prosecution . . . ." *Dupoint v. United States*, 388 F.2d 39, 43 (5th Cir. 1967).

Defendants also lean heavily on *Garza*, but that opinion "falls outside the realm of Rule 18 normalcy." 593 F.3d at 391. The *Garza* panel explicitly limited the decision's applicability to "the rare instances where the district judge orders a transfer, *sua sponte* and over a defendant's objection, and fails to give due consideration to Rule 18 when those factors overwhelmingly advise against transfer." *Id*. Here, the Court is not transferring the case *sua sponte*. Defendants do not object to a transfer, but rather to a transfer anywhere but the division they would prefer. Finally, this Court has given due consideration to Rule 18. Although reasonable persons may disagree on how to balance the relevant considerations, Rule 18 does not "overwhelmingly advise against transfer" to Gulfport, and this Court's determination

can hardly be deemed an abuse of discretion when compared with applicable Fifth Circuit case law.[9]

### III. CONCLUSION

In summary, the Court agrees with Defendants that Rule 18's convenience factor weighs, to some limited extent, in favor of holding the trial in the Northern Division. However, the Court does not agree that it weighs as heavily as Defendants argue, nor that it outweighs the prompt administration of justice or the Court's obligation to efficiently manage judicial resources while protecting the health and safety of all participants. Further, holding this trial in the Northern Division during its current setting would likely deprive other criminal defendants of their right to a speedy trial.

For the reasons provided above, the Court **grants in part and denies in part** Defendant Barrett's Motion to Transfer Venue [60]. Specifically, the Court grants the motion insofar as Defendant seeks a transfer out of the Eastern Division, but the Court denies it insofar as Defendant seeks a transfer to the Northern Division. The trial of this matter will be held in the Southern Division, at the Dan Russell Courthouse in Gulfport, Mississippi.

---

[9] *See Kaufman*, 858 F.2d at 1006 (intradistrict transfer because of district court's docket and "best interests of judicial economy and efficiency" was not an abuse of discretion); *Alvarado*, 647 F.2d at 539-40 (where pretrial publicity made a fair trial impossible, district court did not abuse discretion in transferring to venue 231 miles away, although it imposed additional travel and lodging expenses on defendants); *Fagan*, 821 F.2d at 1008 (trial judge did not abuse discretion in transferring case to another district even though an attorney for the defendant withdrew because of the transfer).

12

SO ORDERED AND ADJUDGED this 3rd day of May, 2021.

/s/    Keith Starrett
_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE
