IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.                                     CRIMINAL NO. 2:20-CR-16-KS-MTP

MITCHELL CHAD BARRETT, *et al.*

## MEMORANDUM OPINION AND ORDER

For the reasons provided below, the Court **denies** Defendant Barrett's Motion to Dismiss [63].

## I. BACKGROUND

On May 27, 2020, the Government filed an Indictment [3] charging Defendants with a variety of crimes arising from an alleged conspiracy to defraud government health care benefit programs by formulating, marketing, selling, and dispensing compound medications; soliciting and paying kickbacks and bribes to and/or from other parties for referrals or prescriptions for medically unnecessary compound medications; and laundering the proceeds of their fraudulent activity. The Government claims that Defendants bilked government health care benefit programs of over $50 million. Defendant Mitchell Chad Barrett filed a Motion to Dismiss [63] Counts 1-11 of the Indictment, which the Court now addresses.

## II. DISCUSSION

"[A] motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment." *United States v. Kay*, 359 F.3d 738,

742 (5th Cir. 2004). In reviewing such motions, "the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Thomas*, 724 F.3d 632, 640 (5th Cir. 2013). "An indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Blevins*, 755 F.3d 312, 319 (5th Cir. 2014). However, "the law does not compel a ritual of words, and an indictment's validity depends on practical, not technical, considerations." *United States v. Sanchez*, 502 F. App'x 375, 383 (5th Cir. 2012). The question "is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards." *United States v. Devoll*, 39 F.3d 575, 579 (5th Cir. 1994).

Defendant Barrett argues that the Indictment fails to state an offense in Counts 1-11 because the facts alleged by the Government establish that he withdrew from the alleged conspiracy over five years before the Government filed the Indictment. Therefore, he contends that the statute of limitations has run on the offenses charged against him in Counts 1-11.

For a conspiracy charge to be timely, the Government must prove "the existence of the conspiracy within five years prior to the return of the indictment, and . . . the commission of at least one overt act by one of the conspirators within that period in furtherance of the conspiratorial agreement." *United States v. Ongaga*, 820

F.3d 152, 157 (5th Cir. 2016). "Generally, the statute of limitations begins to run when the crime is complete, meaning that all the elements of the crime have been satisfied." *Id.* at 159-60. "However, the doctrine of continuing offenses presents a qualification to the general operation of this principle." *United States v. Tavarez-Levario*, 788 F.3d 433, 436 (5th Cir. 2015). A continuing offense "perdures beyond the initial illegal act, and . . . each day brings a renewed threat of the evil Congress sought to prevent even after the elements necessary to establish the crime have occurred." *Id.* at 436-37. Therefore, "[f]or a continuing offense, . . . the statute of limitations does not begin to run when all elements of the crime are first satisfied, but rather when the ongoing commission of the crime comes to an end." *Ongaga*, 820 F.3d at 160. Conspiracies are continuing offenses. *Tavarez-Levario*, 788 F.3d at 440; *see also United States v. Olis*, 429 F.3d 540, 545 (5th Cir. 2005); *United States v. Buckhalter*, 986 F.2d 875, 880 (5th Cir. 1993).

Additionally, "a member of a conspiracy continues to be responsible for acts committed by coconspirators . . . unless he has withdrawn from the conspiracy." *United States v. Puig-Infante*, 19 F.3d 929, 945 (5th Cir. 1994). "If a defendant withdraws from a conspiracy, the statute of limitations begins to run when the withdrawal occurs." *United States v. Ngari*, 559 F. App'x 259, 272 (5th Cir. 2014).

"[W]ithdrawal is an affirmative defense, and the burden of proof is on the defendant." *United States v. Heard*, 709 F.3d 413, 427 (5th Cir. 2013). The Fifth Circuit has not specifically addressed whether it is proper for a district court to

3

address withdrawal from an alleged conspiracy on a Rule 12(b)(3) motion to dismiss. The question is "whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977). "If a question of law is involved, then consideration of the motion is generally proper." *Id.*

This Court has held on at least two occasions that withdrawal from a conspiracy was a question of fact and, therefore, not properly addressed on a Rule 12(b)(3) motion. *See United States v. Arcadia*, 2011 WL 108706, at *2 (S.D. Miss. Jan. 12, 2011) (withdrawal from conspiracy was affirmative defense on which defendant had burden of proof at trial and, therefore, not proper basis for dismissal of indictment for failure to state an offense); *United States v. Pearson*, 2010 WL 3120038, at *2 (S.D. Miss. Aug. 4, 2010) (withdrawal from conspiracy was factual issue that could not be addressed on a motion to dismiss); *see also United States v. Metropolitan Leather & Findings Ass'n*, 82 F. Supp. 449, 453 (S.D.N.Y. 1949). Indeed, withdrawal is "a matter for the jury to decide in the context of the entire case." *United States v. Jimenez*, 622 F.2d 753, 756 (5th Cir. 1980).

Barrett argues that the allegations of the Indictment demonstrate that he withdrew from the alleged conspiracy early enough to render the Indictment untimely. The Court will assume, for the purpose of addressing the present motion, that an affirmative defense such as withdrawal can provide a basis for dismissal under Rule 12(b)(3) if the affirmative defense is demonstrated by the allegations of

4

the indictment, which the Court must assume are true.

## A.    *Count 1*

In Count 1, the Government alleged that Defendants conspired to defraud a federal health care benefit program in violation of 18 U.S.C. § 1347 and commit wire fraud in violation of 18 U.S.C. § 1343, all in violation of 18 U.S.C. § 1349. Barrett argues that the Indictment contains factual allegations demonstrating that he withdrew from the alleged conspiracy. Specifically, the Government alleged: "In or around May 2015, Barrett and Rutland divided WHI's business enterprise between WHI and a newly created pharmacy. Rutland and others took control of WHI, and began doing business as 'Aspire Rx,' and Barrett formed and operated Opus Rx." Indictment [3], at 19. The Government also alleged that Barrett gave up signature authority over WHI's bank account in February 2015. *Id.* at 21.[1]

"A defendant is presumed to continue his involvement in a conspiracy unless he makes a substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose." *Heard*, 709 F.3d at 428. "[T]he defendant must show that he has committed affirmative acts inconsistent with the object of the conspiracy that are communicated in a manner reasonably calculated to reach conspirators. Mere cessation of activity in furtherance of the conspiracy is not sufficient to show

---

[1] Defendant Barrett argues that the Court should take judicial notice of certain litigation he filed against WHI and Rutland in Hinds County Chancery Court. However, Barrett did not attach copies of the relevant court documents or direct the Court to where they can be found in this Court's record. The Court is not obligated to search the dockets of other courts for evidence supporting a party's motion. Regardless, the Court accepts Defendant's representation that he sued WHI and Rutland. It ultimately does not affect the outcome of the current motion, given the Government's allegations, which the Court must accept as true.

withdrawal." *Id.* Moreover, disagreement among co-conspirators does not necessarily indicate withdrawal, as a conspiracy can still exist despite adversity among co-conspirators. *See, e.g. United States v. Fairley*, 880 F.3d 198, 214 (5th Cir. 2018); *United States v. Graham*, 711 F.3d 445, 454-55 (5th Cir. 2013).

The Government plainly alleged that the conspiracy charged in Count 1 "continued through in or around January 2016." Indictment [3], at 21. More specifically, the Government alleged that "[a]fter May 2015, and continuing until at least January 2016, . . . Barrett and others, through Opus Rx, continued to use networks of marketers and practitioners to procure and write prescriptions for medically unnecessary, high-adjudication compound medications produced and dispensed by WHI, Opus Rx, and affiliate pharmacies." *Id.* at 20. In other words, the Government alleged that after Barrett separated from WHI, he continued the scheme through Opus Rx, with Defendants "divid[ing] WHI's network of marketers and practitioners, as well as existing high-adjudication prescriptions previously sent to WHI but not yet filled, between WHI and Opus Rx." *Id.* at 19.

> WHI's main BancorpSouth account continued to make payments to Marketing Company 1, the telemarketing firm that Barrett retained after leaving WHI, and Barrett continued to receive payroll payments from WHI's BancorpSouth account. In addition, Rutland and Barrett used their respective pharmacies to fill prescriptions for each other's pharmacies, and transferred unfilled prescriptions back and forth between each other's pharmacies during this time.

*Id.* at 20. Moreover, "[b]etween approximately January 2011 and approximately January 2016, Barrett . . . caused Special Care Pharmacy, WHI, Opus Rx, and

affiliate pharmacies, to submit false and fraudulent claims to health care benefit programs and PBM's, including TRICARE and other federal health care benefit programs . . . ." *Id.*

Accepting these allegations as true, *see Thomas*, 724 F.3d at 640, the Court concludes that the Indictment does not contain facts which constitute a "substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose" with respect to the conspiracy charged in Count 1. *Heard*, 709 F.3d at 428. At best, there is a dispute of material fact for the jury to resolve. Therefore, the Court denies Defendant's motion with respect to Count 1.

## B.    *Count 2*

In Count 2, the Government alleged that Defendants conspired to defraud the United States and violate the Anti-Kickback Statute, all in violation of 18 U.S.C. § 371. Again, Barrett argues that the Indictment contains factual allegations demonstrating that he withdrew from the alleged conspiracy, citing the same factual allegations recited above. *See* Indictment [3], at 19, 21.

For the same reasons provided above in the Court's discussion of Count 1, the Court concludes that the Indictment does not contain facts which constitute a "substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose" with respect to the conspiracy charged in Count 2. *Heard*, 709 F.3d at 428. The Government plainly alleged that "Barrett and others, through Opus Rx, continued to use networks of marketers and practitioners to procure and write

7

prescriptions for medically unnecessary, high-adjudication compound medications produced and dispensed by WHI, Opus Rx, and affiliate pharmacies." Indictment [3], at 20. The Government also alleged that Opus Rx, Barrett's new company, sent accounting reports to Marketing Companies 1 and 2 in June 2015 with details on the kickbacks they would receive for certain TRICARE prescriptions. *Id.* at 24-25. At best, there is a dispute of material fact for the jury to resolve. Therefore, the Court denies Defendant's motion with respect to Count 2.

## C.   *Counts 3-10*

In Counts 3-10, the Government alleged eight specific violations of the Anti-Kickback Statute ("AKS"), each in violation of 42 U.S.C. § 1320a-7b(b) and 18 U.S.C. § 2, rather than a conspiracy. In that respect, Defendant's withdrawal argument is inapplicable to Counts 3-10.

Regardless, the AKS "criminalizes the payment of any funds or benefits designed to encourage an individual to refer another party to a . . . provider for services to be paid for by" a federal health care benefit program. *United States v. Barnes*, 979 F.3d 283, 295 (5th Cir. 2020). In Counts 3-10, the Government alleged that Barrett and Rutland

> knowingly and willfully offered and paid remuneration, and knowingly and willfully aided, abetted, counseled, commanded, induced, and otherwise caused others to offer and pay remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part under a Federal health care benefit program as defined in Title 42, United States Code, Section

8

1320a-7b(f), that is, TRICARE . . . .

Indictment [3], at 25-26. The Government further alleged that Barrett and Rutland made eight specific payments, or caused eight specific payments to be sent, providing the payments' recipients, dates, and amounts. *Id.* at 26. These allegations are sufficient to state the offenses charged in Counts 3-10, and the Court denies Defendant's motion with respect to Counts 3-10.

## D.   *Count 11*

Finally, in Count 11, the Government alleged that Defendants conspired to launder the illegal proceeds of their scheme in violation of 18 U.S.C. § 1956(h). Again, Barrett argues that the Indictment contains factual allegations demonstrating that he withdrew from the alleged conspiracy, citing the same factual allegations recited above. *See* Indictment [3], at 19, 21.

Barrett apparently contends that his relinquishment of control over WHI constitutes withdrawal from the conspiracy to launder the proceeds of the illegal activities described in the previous counts. This argument is a *non sequitur*. Barrett could relinquish control over WHI (or even withdraw from the previously alleged conspiracies), but still participate in a separate conspiracy to launder the proceeds of the illegal activities conducted before his withdrawal.

Regardless, "[t]o establish conspiracy to commit money laundering, the government must prove (1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement

9

knowing its purpose and with the intent to further the illegal purpose." *United States v. Calderon*, 665 F. App'x 356, 359 (5th Cir. 2016). Here, the Government alleged that Barrett, Rutland, and Shoemaker "did knowingly and intentionally conspire and agree with other persons" to "conduct financial transactions representing the proceeds of specified unlawful activities," alleged elsewhere in the Indictment, "and to conceal said proceeds by obscuring their nature, location, source, ownership, and control." Indictment [3], at 27. Specifically, the Government alleged that Defendants directed the illegal proceeds "to accounts in the name of WHI," and that they then "directed funds, via electronic funds transfer, wire transfer, or check, from accounts in the name of WHI to shell entities used to further launder the funds, purchase real property, and benefit themselves." *Id.* at 28. The Government also alleged that Defendants "used LLC's, nominees, trusts, and other entities to obscure and conceal the fraud proceeds," and that they used bank accounts belonging to other companies "to conceal the nature, source, and origin of fraud proceeds that were then used to pay illegal kickbacks." *Id.*

These allegations, which the Court must accept as true, are sufficient to state the offense charged in Count 11, and the Court denies Defendant's motion with respect to Count 11.

### III. CONCLUSION

For these reasons, the Court **denies** Defendant Barrett's Motion to Dismiss [63].

SO ORDERED AND ADJUDGED this 27th day of May, 2021.

/s/      Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE